## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

GRAMERCY COURT PHASE 2, LLC, A
FLORIDA LIMITED LIABILITY COMPANY;
GRAMERCY COURT PHASE 3, LLC, A
FLORIDA LIMITED LIABILITY COMPANY;
GRAMERCY COURT PHASE 4, LLC, A
FLORIDA LIMITED LIABILITY COMPANY,
AND
RAMOS DESIGN BUILD CORPORATION
D/B/A RAMOS CONSTRUCTION,
     Plaintiffs,

     v.                            Case No.:

CLEAR BLUE SPECIALTY INSURANCE
COMPANY, CONTINENTAL CASUALTY
COMPANY, GUIDEONE INSURANCE
COMPANY, AMWINS GROUP, INC.,
AND FRANK WINSTON CRUM
INSURANCE COMPANY,
     Defendants.

_____/

## <u>COMPLAINT</u>

COME NOW, Plaintiffs, Gramercy Court Phase 2, LLC ("Gramercy 2"),

Gramercy Court Phase 3, LLC ("Gramercy 3"), Gramercy Court Phase 4, LLC

("Gramercy 4") (collectively, the "Gramercy Entities"), and Ramos Design Build

Corporation d/b/a Ramos Construction ("Ramos Construction") (collectively,

"Plaintiffs"), by and through their undersigned counsel, and hereby sue Defendants,

Clear Blue Specialty Insurance Company ("Clear Blue"), Continental Casualty

Company ("CNA"), AmWINS Group, Inc. ("AmWINS"), GuideOne Insurance

Company ("GuideOne"), and Frank Winston Crum Insurance Company "(FrankCrum) (collectively, "Defendants"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Gramercy 2 is a Florida limited liability company organized and existing under the laws of the State of Florida. Its sole member is RAMOS INVESTMENT GROWTH FUND III, LLC which is organized and exists under the laws of the State of Florida. RAMOS INVESTMENT GROWTH FUND III, LLC's sole member is BAY TO BAY ASSET MANAGEMENT, LLC which is organized and exists under the laws of the State of Florida. BAY TO BAY ASSET MANAGEMENT, LLC is solely owned by SOMAR, LLLP. SOMAR, LLLP is a Florida Limited Partnership which is owned by James A. Ramos, Constance R. Ramos and James A Ramos as Trustee of The Ramos Family Trust 2011 who are residents of Tampa, Florida. a Florida Limited Partnership which is solely owned by Connie and James Ramos who are residents of Tampa, Florida.

2.      Gramercy 3 is a Florida limited liability company organized and existing under the laws of the State of Florida. Its sole member is RAMOS INVESTMENT GROWTH FUND III, LLC which is organized and exists under the laws of the State of Florida. RAMOS INVESTMENT GROWTH FUND III, LLC's sole member is BAY TO BAY ASSET MANAGEMENT, LLC which is organized and exists under the laws of the State of Florida. BAY TO BAY ASSET MANAGEMENT, LLC is solely owned by SOMAR, LLLP. SOMAR, LLLP is a Florida Limited Partnership

which is owned by James A. Ramos, Constance R. Ramos and James A Ramos as Trustee of The Ramos Family Trust 2011 who are residents of Tampa, Florida.

3.    Gramercy 4 is a Florida limited liability company organized and existing under the laws of the State of Florida. Its sole member is RAMOS INVESTMENT GROWTH FUND III, LLC which is organized and exists under the laws of the State of Florida. RAMOS INVESTMENT GROWTH FUND III, LLC's sole member is BAY TO BAY ASSET MANAGEMENT, LLC which is organized and exists under the laws of the State of Florida. BAY TO BAY ASSET MANAGEMENT, LLC is solely owned by SOMAR, LLLP. SOMAR, LLLP is a Florida Limited Partnership which is owned by James A. Ramos, Constance R. Ramos and James A Ramos as Trustee of The Ramos Family Trust 2011 who are residents of Tampa, Florida.

4.    Ramos Design Build Corporation d/b/a Ramos Construction, is a Florida corporation organized and existing under the laws of the State of Florida.

5.    Upon information and belief, Defendant, Clear Blue Specialty Insurance Company, is an insurance company organized and existing under the laws of the State of Texas with its principal place of business located in Guaynabo, Puerto Rico.

6.    Upon information and belief, Defendant, Continental Casualty Company, is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois.

7.    Upon information and belief, Defendant, AmWINS Group, Inc. is a specialty insurance distributor organized and existing under the laws of the State of Delaware with its principal place of business located in Charlotte, North Carolina.

8.    Upon information and belief, Defendant, GuideOne Insurance Company, is an insurance company organized and existing under the laws of the State of Iowa with its principal place of business located in West Des Moines, Iowa.

9.    Upon information and belief, Defendant, Frank Winston Crum Insurance Company, is an insurance company organized and existing under the laws of the State of Florida with its principal place of business located in Clearwater, Florida.

10.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2), as the loss which gave rise to this insurance coverage action occurred in Pinellas County, Florida.

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is an actual controversy between the parties; the amount in controversy exceeds $75,000, exclusive of interest and costs; and the matter is between citizens of different states.

12.    This Court has personal jurisdiction over Clear Blue as it is an insurance company licensed and authorized to conduct business in Florida; conducts business in Florida; and issued the relevant insurance policy giving rise to this insurance coverage action to a policyholder located in Florida.

13.    This Court has personal jurisdiction over Clear Blue because it regularly conducts business in Florida.

14.    This Court has personal jurisdiction over CNA as it is an insurance company licensed and authorized to conduct business in Florida; conducts business in

Florida; and issued the relevant insurance policy giving rise to this insurance coverage action to a policyholder located in Florida.

15.    This Court has personal jurisdiction over CNA because it regularly conducts business in Florida.

16.    This Court has personal jurisdiction over AmWINS as it is a specialty insurance distributor licensed and authorized to conduct business in Florida; conducts business in Florida; and issued the relevant insurance policy giving rise to this insurance coverage action to a policyholder located in Florida.

17.    This Court has personal jurisdiction over AmWINS because it regularly conducts business in Florida.

18.    This Court has personal jurisdiction over GuideOne as it is an insurance company licensed and authorized to conduct business in Florida; conducts business in Florida; and issued the relevant insurance policy giving rise to this insurance coverage action to a policyholder located in Florida.

19.    This Court has personal jurisdiction over GuideOne because it regularly conducts business in Florida.

20.    This Court has personal jurisdiction over FrankCrum as it is an insurance company licensed and authorized to conduct business in Florida; conducts business in Florida; and issued the relevant insurance policy giving rise to this insurance coverage action to a policyholder located in Florida.

21.    This Court has personal jurisdiction over FrankCrum because it regularly conducts business in Florida.

22.     All conditions precedent to the filing of this lawsuit have occurred, have been waived, have been performed, or have been otherwise satisfied.

## GENERAL ALLEGATIONS

23.     Gramercy 2, Gramercy 3, and Gramercy 4 each purchased portions of land previously owned by BC HIGHLAND LLC and BC HIGHLAND II LLC, in Pinella County, Florida, upon which the Highlands Avenue Townhomes Community (the "Community") now sits.

24.     The Developers each separately contracted with Ramos Design Build Corporation d/b/a/ Ramos Construction to serve as General Contractor to develop their respective Lots (the "Developments").

25.     As General Contractor, Ramos Construction entered into a subcontract with SD PREMIER STUCCO LLC ("SD Stucco") on September 24, 2021, to provide the materials and/or labor for the installation of stucco and its related accessories at the Developments.

26.     As General Contractor, Ramos Construction entered into a subcontract with DYNAMIC ROOFING HOLDINGS, LLC ("Dynamic") on January 11, 2021, to provide the materials and labor for the installation of the roofs and related accessories for the Developments.

27.     As General Contractor, Ramos Construction entered into a subcontract with ASAP SHELL CONTRACTING, INC. ("ASAP") on October 14, 2021, to provide the materials and labor for the installation of the framing, driveways, sidewalks and related accessories for the Developments.

28.    As General Contractor, Ramos Construction entered into a subcontract with BADGER CONSTRUCTION & ASSOCIATES, INC. ("Badger") on January 13, 2021, to provide the materials and/or labor for the installation of the framing and related accessories at the Developments.

29.    As General Contractor, Ramos Construction entered into a subcontract with TERRAGOLD CONSTRUCTION SERVICES, INC. ("Terragold") on November 10, 2022, to provide the materials and/or labor for the installation of the stucco, siding, soffit, fascia and related accessories at the Developments.

30.    The Subcontracts required the Subcontractors to add the Plaintiffs as additional insured on their general liability policies. Specifically, Section 12 of the Contracts states, in pertinent part:

12. Insurance.

Subcontractor shall purchase and maintain for the entire life of the Project, until acceptance by the Contractor and Owner, such insurance as will protect Subcontractor from claims under workers' compensation laws, disability and benefit laws or other similar employee benefit laws because of bodily injury, occupational sickness or disease, or death of its employees and claims insured by usual or unusual injury, liability coverage from claims for injury to or destruction of tangible property and claims insured by usual Commercial General Liability coverage. This includes loss of use resulting therefrom, any operations by Subcontractor or its sub-subcontractors or by anyone directly or indirectly employed by any of them or for whose acts any of them may be legally liable. This insurance shall be written for not less than limit of liability specified and incorporated as part of the Subcontract Documents or as required by law, whichever is greater, and shall include the following:

A. Type of Insurance

  1. Commercial General Liability
    a. $1,000,000 minimum limit per occurrence $1,000,000 minimum limit aggregate applicable to this specific Project
    b. Operations
    c. Owners and Contractor Protective Liability
    d. Products and Completed Operations
    e. Explosions, Underground and Collapse (if applicable)
    f. Contractual liability
    g. Broad Form Property Damage

. . . . .

  4. Umbrella Liability. Provide an Excess Liability policy of $1,000,000 in addition to the scheduled underlying policies (Comprehensive General Liability, Auto Liability, and Employers Liability). The maximum self-insured retention or occurrences insured in this excess liability policy shall not exceed Ten Thousand ($10,000) Dollars.

B. Certificates of Insurance

Prior to the start of any work, the Subcontractor shall provide certificates of such insurance, acceptable to the Contractor and Owner. These certificates shall contain a provision that the coverage afforded under the policies shall not be canceled or materially changed until at least thirty (30) calendar days prior written notice has been given to the Contractor.

The Contractor and Owner shall be named as additional insureds under Subcontractor's general liability policies and additional insured status shall be so noted on the Certificates of Insurance and written Endorsements. The Subcontractor's insurance coverage shall be considered the primary insurance with respect to the work on this project for Contractor, its directors, officers, and employees. Any insurance or self-insurance maintained by Contractor shall be in excess of the Subcontractor's insurance. . .

31.    Pursuant to the terms of the subcontracts, the Subcontractors were obligated to procure and maintain general liability insurance and products completed operations coverage and name the Plaintiffs as additional insureds on such policies.

32.    On or about May 9, 2024, Highland Avenue Townhome Association, Inc. filed suit against Plaintiffs in the Sixth Judicial Circuit, in and for Pinellas County, Florida, which was later amended on September 13, 2024, against the Plaintiffs and certain subcontractors, alleging code violations and defects and deficiencies in the construction of the homes (the "Underlying Action"). A copy of the Amended Complaint is attached hereto as **Exhibit A** (the "Complaint").

33.    The Underlying Action is styled Highland Avenue Townhome Association, Inc. v. Gramercy Court Phase 2, LLC, et al bearing case number 24-002048-CI.

34.    The Complaint contains allegations of property damage relating to the Developments, including specific allegations that the Subcontractors' negligently performed work that resulted in property damage at the Developments. The Underlying Action also alleges vicarious liability against the Plaintiffs for the negligence of the Subcontractors.

35.    The Plaintiffs tendered their demand for additional insured coverage to SD Stucco on July 10, 2024.

36.    Plaintiffs then sent follow up demands directly to SD Stucco's general liability carrier, Clear Blue, on February 24, 2025, June 26, 2025, and October 2, 2025.

37.    To date, Clear Blue has not acknowledged coverage and agreed to provide Plaintiffs a defense.

38.    The Plaintiffs tendered their demand for additional insured coverage to Dynamic on July 10, 2024.

9

39.     Plaintiffs then sent follow up demands directly to Dynamic's general liability carrier, CNA, on February 2, 2024, May 5, 2025, and October 2, 2025.

40.     To date, Plaintiffs have not received a response from CNA.

41.     CNA's failure to respond and acknowledge its duty to defend is tantamount to a denial of coverage.

42.     The Plaintiffs tendered their demand for additional insured coverage to ASAP on July 10, 2024.

43.     Upon information and belief ASAP satisfied its statutory obligations to forward this demand to AmWINS.

44.     Plaintiffs then sent a follow up demand directly to AmWINS on May 22, 2025.

45.     To date, Plaintiffs have not received a response from AmWINS, and AmWINS has failed to satisfy its obligation under Florida Statute 627.4137.

46.     AmWINS' failure to respond and acknowledge its duty to defend is tantamount to a denial of coverage.

47.     The Plaintiffs tendered their demand for additional insured coverage to Badger on July 19, 2024.

48.     Plaintiffs then sent follow up demands directly to Badger's general liability carrier, GuideOne, on February 24, 2025, May 5, 2025, and October 2, 2025.

49.     GuideOne issued a denial to Plaintiffs' tender on September 9, 2024.

50.     Plaintiffs tendered their demand for additional insured coverage to Terragold on July 10, 2024.

51.    Plaintiffs then sent follow up demands directly to Terragold's general liability carrier, FrankCrum, on February 2, 2024, May 5, 2025, and October 2, 2025.

52.    To date, Plaintiffs have not received a response from FrankCrum, and FrankCrum has failed to satisfy its obligation under Florida Statute 627.4137.

53.    FrankCrum's failure to respond and acknowledge its duty to defend is tantamount to a denial of coverage.

## THE UNDERLYING ACTION

54.    The Complaint asserts thirty-three (33) counts, including three (3) claims against Gramercy 2 for Violation of Florida Building Code (Count 1), Negligence and Vicarious Liability (Count 2), and Breach of Implied Warranty (Count 3);  three (3) claims against Gramercy 3 for Violation of Florida Building Code (Count 4), Negligence and Vicarious Liability (Count 5), and Breach of Implied Warranty (Count 6); three (3) claims against Gramercy 4 for Violation of Florida Building Code (Count 7), Negligence and Vicarious Liability (Count 8), and Breach of Implied Warranty (Count 9); and three (3) claims against Ramos for Violation of Florida Building Code (Count 10), Negligence and Vicarious Liability (Count 11), and Breach of Implied Warranty (Count 12).

55.    The Complaint also asserts two (2) claims against SD Stucco for Violation of Florida Building Code (Count 17) and Negligence (Count 18); two (2) claims against Dynamic for Violation of Florida Building Code (Count 19) and Negligence (Count 20); two (2) claims against Terragold for Violation of Florida Building Code (Count 22) and Negligence (Count 23); two (2) claims against ASAP

for Violation of Florida Building Code (Count 24) and Negligence (Count 25); and two (2) claims against Badger for Violation of Florida Building Code (Count 26) and Negligence (Count 27).

56.     The Complaint explicitly alleges property damage resulting from the Defendants' ongoing and/or completed operations at the Developments, and vicarious liability against the Plaintiffs for the property damage resulting from the Defendants' operations.

## **THE POLICIES**

57.     Clear Blue issued Commercial General Liability Policies No. AR01-RS-2201617-02 for the policy period of April 9, 2022 - April 9, 2023 and No. AR01-RS-2301617-03 for the policy period of April 9, 2023 - April 9, 2024 (the "SD Stucco Clear Blue Policies").

58.     A copy of the SD Stucco Clear Blue Policy bearing number AR01-RS-2201617-02 is attached as **Exhibits B**.

59.     Clear Blue has failed to provide a copy of policy No. AR01-RS-2301617-03 despite Plaintiffs' demands under Section 627.4137, Florida Statutes.

60.     The SD Stucco Clear Blue Policies carry limits of $2 million General Aggregate Limit (Other than Products/Completed Operations); $2 million Products/Completed Operations Aggregate Limit; and $1 million Each Occurrence Limit.

61.     The SD Stucco Clear Blue Policies include endorsement CG 20 37 04 13, Additional Insured – Owners, Lessees or Contractors –Completed Operations. Pursuant to this endorsement:

> **A.     Section II -  Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".
>
> However:
>
>> 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
>> 2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

62.     The Schedule referenced in the endorsement states "Blanket where required by written contract signed by both parties and the contract is executed prior to any loss."

63.     The Additional Insured requirements of Section 12 of the Subcontracts satisfy the criteria of the Additional Insured endorsements under the SD Stucco Clear Blue Policies as an agreement in writing executed prior to the alleged property damage at issue here.

64.     In addition, the allegations of the Association's Complaint expressly detail claims of property damage caused by SD Stucco's work.

65.     The Plaintiffs satisfy the conditions of Additional Insureds under the SD Stucco Clear Blue Policies therefore qualifying as additional insureds.

66.     The Complaint alleges damages that could potentially be covered under the SD Stucco Clear Blue Policies.

67.     CNA issued Commercial General Liability Policy No. 7012217889 to Dynamic for the policy period of April 1, 2022 - April 1, 2023 (the "Dynamic CNA Policy").

68.     A copy of the Dynamic CNA Policy is attached hereto as **Exhibit C**.

69.     The Dynamic CAN Policy carries limits of $2 million General Aggregate Limit (Other than Products/Completed Operations); $2 million Products/Completed Operations Aggregate Limit; and $1 million Each Occurrence Limit.

70.     The Dynamic CNA Policy contains a Contractors' General Liability Extension Endorsement. Pursuant to this endorsement:

**1. ADDITIONAL INSUREDS**

**a. WHO IS AN INSURED** is amended to include as an **Insured** any person or organization described in paragraphs **A.** through **H.** below whom a **Named Insured** is required to add as an additional insured on this **Coverage Part** under a written contract or written agreement, provided such contract or agreement:

(1) is currently in effect or becomes effective during the term of this **Coverage Part**; and
(2) was executed prior to:

(a) the **bodily injury** or **property damage**; or
(b) the offense that caused the **personal and advertising injury**, for which   such additional insured seeks coverage.

**b.** However, subject always to the terms and conditions of this policy, including the limits of insurance, the Insurer will not provide such additional insured with:

> **(1)** a higher limit of insurance than required by such contract or agreement; or
> **(2)** coverage broader than required by such contract or agreement, and in no event broader than that described by the applicable paragraph **A.** through **H.** below.

Any coverage granted by this endorsement shall apply only to the extent permissible by law.

71.    The Dynamic CNA Policy also includes a Blanket Additional Insured –

Owners, Lessees or Contractors – with Products-Completed Operations Coverage

Endorsement. Pursuant to this endorsement:

**I. WHO IS AN INSURED** is amended to include as an **Insured** any person or organization whom you are required by **written contract** to add as an additional insured on this **coverage part**, but only with respect to liability for **bodily injury**, **property damage** or **personal and advertising injury** caused in whole or in part by your acts or omissions, or the acts or omissions of those acting on your behalf:

**A.** in the performance of your ongoing operations subject to such **written contract**; or
**B.** in the performance of **your work** subject to such **written contract**, but only with respect to **bodily injury** or **property damage** included in the **products-completed operations hazard**, and only if:

**1.** the **written contract** requires you to provide the additional insured such coverage; and **2.** this **coverage part** provides such coverage.

**II.** But if the **written contract** requires:

**A.** additional insured coverage under the 11-85 edition, 10-93 edition, or 10-01 edition of CG2010, or under the 10- 01 edition of CG2037; or
**B.** additional insured coverage with "arising out of" language; or
**C.** additional insured coverage to the greatest extent permissible by law;

then paragraph **I.** above is deleted in its entirety and replaced by the following:

**WHO IS AN INSURED** is amended to include as an **Insured** any person or organization whom you are required by **written contract** to add as an additional insured on this **coverage part**, but only with respect to liability for **bodily injury**, **property damage** or **personal and advertising injury** arising out of **your work** that is subject to such **written contract**.

72.     The Additional Insured requirements of Section 12 of the Subcontracts satisfy the criteria of the Additional Insured endorsements under the Dynamic CNA Policy as an agreement in writing executed prior to the alleged property damage at issue here.

73.     In addition, the allegations of the Association's Complaint expressly detail claims of property damage caused by Dynamic's work.

74.     The Plaintiffs satisfy the conditions of Additional Insureds under the Dynamic CNA Policy therefore qualifying as additional insureds.

75.     The Complaint alleges damages that could potentially be covered under the Dynamic CNA Policy.

76.     AmWINS issued a General Liability Policy No. PPC000011500 to ASAP for the policy period of December 22, 2022 – December 22, 2023 (the "ASAP AmWINS Policy").

77.     Despite repeated statutory requests, to date a copy of the ASAP AmWINS Policy has not been provided. A copy of the ASAP AmWINS Policy will be filed upon receipt.

78.     The Policy carries limits of $2 million General Aggregate Limit (Other than Products/Completed Operations); $2 million Products/Completed Operations Aggregate Limit; and $1 million Each Occurrence Limit.

79.     Upon information and belief ASAP satisfied its contractual obligations to the Plaintiffs and named them as additional insureds on the ASAP AmWINS policy.

80.     The Subcontract should satisfy the criteria of any Additional Insured endorsement under the ASAP AmWINS Policy as an agreement in writing executed prior to the alleged property damage at issue here.

81.     In addition, the allegations of the Association's Complaint expressly detail claims of property damage caused by ASAP's work, triggering additional insured coverage.

82.     The Plaintiffs satisfy the conditions of Additional Insureds under the ASAP AmWINS Policy therefore qualifying as additional insureds.

83.     The Complaint alleges damages that could potentially be covered under the ASAP AmWINS Policy.

84.     GuideOne issued a General Liability Policy No. 563000346-02 to Badger for the policy period of March 21, 2023 – March 21, 2024 (the "Badger GuideOne Policy").

85.     A copy of the Badger GuideOne Policy is attached as **Exhibit D**.

86.     The Policy carries limits of $2 million General Aggregate Limit (Other than Products/Completed Operations); $2 million Products/Completed Operations Aggregate Limit; and $1 million Each Occurrence Limit.

87.     The Badger GuideOne Policy includes endorsement CG 20 37 04 13, Additional Insured – Owners, Lessees or Contractors –Completed Operations. Pursuant to this endorsement:

> **A.     Section II -  Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".
>
> However:
>
> > 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
> > 2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

88.     The Schedule referenced in the endorsement states "As required by written contract."

89.     The Additional Insured requirements of Section 12 of the Subcontracts satisfy the criteria of the Additional Insured endorsement under the Badger GuideOne Policy as a requirement by written contract.

90.    In addition, the allegations of the Association's Complaint expressly detail claims of property damage caused by Badger's work, triggering additional insured coverage.

91.    The Plaintiffs satisfy the conditions of Additional Insureds under the Badger GuideOne Policy therefore qualifying as additional insureds.

92.    The Badger GuideOne Policy also includes A Continuous or Progressive Injury or Damage Exclusion.

93.    GuideOne relies on this exclusion in its denial of coverage under the Badger GuideOne Policy.

94.    However, there are no allegations in the Complaint that the damage first existed or is alleged to have first existed prior to the inception of the Badger GuideOne Policy.

95.    There are also no allegations in the Complaint that the damage caused in whole or in part by Badger was not sudden and accidental and/or did not take place within the policy period.

96.    The Complaint alleges damages that could potentially be covered under the Badger GuideOne Policy.

97.    FrankCrum issued a General Liability Policy No. FGFL0026452700 to Terragold for the policy period of October 11, 2022 – October 11, 2023 (the "Terragold FrankCrum Policy").

98.    Despite repeated statutory requests, to date a copy of the Terragold FrankCrum Policy has not been provided. A copy of the Terragold FrankCrum Policy will be filed upon receipt.

99.    The Terragold FrankCrum Policy carries limits of $2 million General Aggregate Limit (Other than Products/Completed Operations); $2 million Products/Completed Operations Aggregate Limit; and $1 million Each Occurrence Limit.

100.    Upon information and belief Terragold satisfied its contractual obligations to the Plaintiffs and named them as additional insureds on the Terragold FrankCrum Policy.

101.    The Subcontract should satisfy the criteria of any Additional Insured endorsement under the Terragold FrankCrum Policy as an agreement in writing executed prior to the alleged property damage at issue.

102.    In addition, the allegations of the Association's Complaint expressly detail claims of property damage caused by Terragold's work, triggering additional insured coverage.

103.    The Plaintiffs satisfy the conditions of Additional Insureds under the Terragold FrankCrum Policy therefore qualifying as additional insureds.

104.    The Complaint alleges damages that could potentially be covered under the Terragold FrankCrum Policy.

## COUNT I

### Declaratory Judgment – Duty to Defend

### (against Clear Blue)

105.    Plaintiffs reallege and reincorporate the factual allegations contained in Paragraphs 1 through Paragraphs 103 above as if fully set forth herein.

106.    This is an action pursuant to 28 U.S.C. §2201, seeking a declaratory judgment against Clear Blue for the purpose of determining a question or actual controversy between the parties concerning rights, obligations, and coverage under the Policy.

107.    Pursuant to the terms of the Policy, Clear Blue is obligated to defend the Plaintiffs in connection with the Suit.

108.    A dispute has arisen between the Plaintiffs and Clear Blue regarding whether Clear Blue is obligated to provide additional insured coverage to Plaintiffs, reimburse Plaintiffs for any and all post tender costs incurred to defend themselves in the Suit, and provide Plaintiffs with a defense for the duration of the Suit.

109.    An actual and justiciable controversy exists between the Plaintiffs and Clear Blue as to their respective rights under the Policy, in that the Plaintiffs' claim, and Clear Blue denies, that Clear Blue has a duty to defend the Plaintiffs in connection with the Suit.

110.    Plaintiffs are entitled to recover reasonable attorney's fees, costs, and suit monies incurred in this action against Clear Blue, pursuant to Florida Statute § 86.121 as Clear Blue has made a complete denial of coverage.

## COUNT II

### Declaratory Judgment – Duty to Defend

### (against CNA)

111. Plaintiffs reallege and reincorporate the factual allegations contained in Paragraphs 1 through Paragraphs 109 above as if fully set forth herein.

112. This is an action pursuant to 28 U.S.C. §2201, seeking a declaratory judgment against CNA for the purpose of determining a question or actual controversy between the parties concerning rights, obligations, and coverage under the Policy.

113. Pursuant to the terms of the Policy, CNA is obligated to defend the Plaintiffs in connection with the Suit.

114. A dispute has arisen between the Plaintiffs and CNA regarding whether CNA is obligated to provide additional insured coverage to Plaintiffs, reimburse Plaintiffs for any and all post tender costs incurred to defend themselves in the Suit, and provide Plaintiffs with a defense for the duration of the Suit.

115. An actual and justiciable controversy exists between the Plaintiffs and CNA as to their respective rights under the Policy, in that the Plaintiffs' claim, and CNA denies, that CNA has a duty to defend the Plaintiffs in connection with the Suit.

116. Plaintiffs are entitled to recover reasonable attorney's fees, costs, and suit monies incurred in this action against CNA, pursuant to Florida Statute § 86.121 as CNA has made a complete denial of coverage.

## COUNT III

### Declaratory Judgment – Duty to Defend

### (against AmWINS)

117.   Plaintiffs reallege and reincorporate the factual allegations contained in Paragraphs 1 through Paragraphs 115 above as if fully set forth herein.

118.   This is an action pursuant to 28 U.S.C. §2201, seeking a declaratory judgment against AmWINS for the purpose of determining a question or actual controversy between the parties concerning rights, obligations, and coverage under the Policy.

119.   Pursuant to the terms of the Policy, AmWINS is obligated to defend the Plaintiffs in connection with the Suit.

120.   A dispute has arisen between the Plaintiffs and AmWINS regarding whether AmWINS is obligated to provide additional insured coverage to Plaintiffs, reimburse Plaintiffs for any and all post tender costs incurred to defend themselves in the Suit, and provide Plaintiffs with a defense for the duration of the Suit.

121.   An actual and justiciable controversy exists between the Plaintiffs and AmWINS as to their respective rights under the Policy, in that the Plaintiffs' claim, and AmWINS denies, that AmWINS has a duty to defend the Plaintiffs in connection with the Suit.

122.   Plaintiffs are entitled to recover reasonable attorney's fees, costs, and suit monies incurred in this action against AmWINS, pursuant to Florida Statute § 86.121 as AmWINS has made a complete denial of coverage.

## COUNT IV

## Declaratory Judgment – Duty to Defend

## (against GuideOne)

123.    Plaintiffs reallege and reincorporate the factual allegations contained in Paragraphs 1 through Paragraphs 121 above as if fully set forth herein.

124.    This is an action pursuant to 28 U.S.C. §2201, seeking a declaratory judgment against GuideOne for the purpose of determining a question or actual controversy between the parties concerning rights, obligations, and coverage under the Policy.

125.    Pursuant to the terms of the Policy, GuideOne is obligated to defend the Plaintiffs in connection with the Suit.

126.    A dispute has arisen between the Plaintiffs and GuideOne regarding whether GuideOne is obligated to provide additional insured coverage to Plaintiffs, reimburse Plaintiffs for any and all post tender costs incurred to defend themselves in the Suit, and provide Plaintiffs with a defense for the duration of the Suit.

127.    An actual and justiciable controversy exists between the Plaintiffs and GuideOne as to their respective rights under the Policy, in that the Plaintiffs' claim, and GuideOne denies, that GuideOne has a duty to defend the Plaintiffs in connection with the Suit.

128.    Plaintiffs are entitled to recover reasonable attorney's fees, costs, and suit monies incurred in this action against GuideOne, pursuant to Florida Statute § 86.121 as GuideOne has made a complete denial of coverage.

## COUNT V

### Declaratory Judgment – Duty to Defend

### (against FrankCrum)

129.   Plaintiffs reallege and reincorporate the factual allegations contained in Paragraphs 1 through Paragraphs 127 above as if fully set forth herein.

130.   This is an action pursuant to 28 U.S.C. §2201, seeking a declaratory judgment against FrankCrum for the purpose of determining a question or actual controversy between the parties concerning rights, obligations, and coverage under the Policy.

131.   Pursuant to the terms of the Policy, FrankCrum is obligated to defend the Plaintiffs in connection with the Suit.

132.   A dispute has arisen between the Plaintiffs and FrankCrum regarding whether FrankCrum is obligated to provide additional insured coverage to Plaintiffs, reimburse Plaintiffs for any and all post tender costs incurred to defend themselves in the Suit, and provide Plaintiffs with a defense for the duration of the Suit.

133.   An actual and justiciable controversy exists between the Plaintiffs and FrankCrum as to their respective rights under the Policy, in that the Plaintiffs' claim, and FrankCrum denies, that FrankCrum has a duty to defend the Plaintiffs in connection with the Suit.

134.   Plaintiffs are entitled to recover reasonable attorney's fees, costs, and suit monies incurred in this action against FrankCrum, pursuant to Florida Statute § 86.121 as FrankCrum has made a complete denial of coverage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray against Defendants as follows:

Against Clear Blue:

1.     A declaration and judgment that Clear Blue is obligated to defend Plaintiffs, reimburse any previously incurred defense fees and costs, and provide Plaintiffs with a defense moving forward in the Suit;

2.     Prejudgment interest;

3.     Attorneys' fees and costs for being forced to file this action to pursue coverage due to Clear Blue's improper denial; and

4.     All other relief that this Court deems just and proper under the circumstances in Plaintiffs' favor.

Against CNA:

5.     A declaration and judgment that CNA is obligated to defend Plaintiffs, reimburse any previously incurred defense fees and costs, and provide Plaintiffs with a defense moving forward in the Suit;

6.     Prejudgment interest;

7.     Attorneys' fees and costs for being forced to file this action to pursue coverage due to CNA's improper denial; and

8.     All other relief that this Court deems just and proper under the circumstances in Plaintiffs' favor.

Against AmWINS:

9.     A declaration and judgment that AmWINS is obligated to defend Plaintiffs, reimburse any previously incurred defense fees and costs, and provide Plaintiffs with a defense moving forward in the Suit;

10.    Prejudgment interest;

11.    Attorneys' fees and costs for being forced to file this action to pursue coverage due to AmWINS's improper denial; and

12.    All other relief that this Court deems just and proper under the circumstances in Plaintiffs' favor.

Against GuideOne:

13.    A declaration and judgment that GuideOne is obligated to defend Plaintiffs, reimburse any previously incurred defense fees and costs, and provide Plaintiffs with a defense moving forward in the Suit;

14.    Prejudgment interest;

15.    Attorneys' fees and costs for being forced to file this action to pursue coverage due to GuideOne's improper denial; and

16.    All other relief that this Court deems just and proper under the circumstances in Plaintiffs' favor.

Against FrankCrum:

17.    A declaration and judgment that FrankCrum is obligated to defend Plaintiffs, reimburse any previously incurred defense fees and costs, and provide Plaintiffs with a defense moving forward in the Suit;

18.    Prejudgment interest;

19.     Attorneys' fees and costs for being forced to file this action to pursue coverage due to FrankCrum's improper denial; and

20.     All other relief that this Court deems just and proper under the circumstances in Plaintiffs' favor.

### JURY DEMAND

The Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

DATED:  January 14, 2026              Respectfully submitted,

/s/Stephanie A. Giagnorio
Stephanie A. Giagnorio
Florida Bar No. 116557
Kelly A. Johnson
Florida Bar No. 44273
Saxe Doernberger & Vita, P.C.
999 Vanderbilt Beach Road, Suite 603,
Naples, Florida 34108
Tel. No. 239.316.7244
Primary: sgiagnorio@sdvlaw.com
Primary:  kjohnson@sdvlaw.com
Secondary: charper@sdvlaw.com
*Attorneys for Developers*